# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| SHC HOLDINGS, LLC, a Kansas limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>JP DENISON, LLC, a Nevada limited liability company,<br><br>Defendant. | Case No. 2:17-cv-02718-KJD-BNW<br><br>ORDER |

Presently before the Court is Plaintiff's Motion for Summary Judgment (#36). Defendant filed a response in opposition (#38) to which Plaintiff replied (#39).

<u>I. Facts</u>

On February 10, 2004, the United States Patent and Trademark Office issued U.S. Patent No. D486,531 ("the '531 Patent"), entitled "Slot Machine Card Holder." Plaintiff SHC Holdings, LLC ("SHC") owns all right, title and interest to the '531 Patent, including the right to sue for past, present and future infringements. SHC was assigned the patent on or about May 20, 2013. <u>See</u> Plaintiff's Motion for Summary Judgment, Doc. 36, Ex. 1 (hereinafter "Ex. #"). SHC owns copyright registration No. VA 1-867-812, effective July 8, 2013, for a sculptural work entitled SLOT CLAW (the "Slot Claw Sculpture"). SHC owns all right, title, and interest to the copyright in the Slot Claw Sculpture, including the right to sue for past, present, and future infringements. Ex. 2.

Defendant JP Denison has sold bungee cord clips that resemble slot machines ("Slot Machine Bungee Clips"). Ex. 3, Deposition of Michele Denison at 23:11-24:14. JP Denison produced samples of the Slot Machine Bungee Clips it sold. Pictures of the Slot Machine Bungee Clips produced by JP Denison are attached as an exhibit to the declaration of Plaintiff's counsel,

| | |
|---|---|
| 1 | Kyle Donnelly. Ex. 4, Declaration of Kyle Donnelly. Pictures of the Slot Machine Bungee Clips |
| 2 | are also shown in Exhibit 3 to the Complaint. ECF No. 1-3; Ex. 3, Denison Depo. at 27:1-13. |

JP Denison sold the Slot Machine Bungee Clips. JP Denison sold at least 329,500 Slot Machine Bungee Clips for a total pretax sales amount of $63,762.60. JP Denison ordered at least 392,500 Slot Machine Bungee Clips at a total material cost of $52,515. JP Denison ordered the Slot Machine Bungee Clips at a unit price of 13.4 cents per clip and sold the Slot Machine Bungee Clips at a unit price of 19.4 cents per clip.

JP Denison imported the Slot Machine Bungee Clips from China. When ordering the Slot Machine Bungee Clips from its supplier, JP Denison sends specifications and visual artwork to show the supplier what the Slot Machine Bungee Clips should look like. When offering to sell its Slot Machine Bungee Clips, JP Denison sends visual renderings of the Slot Machine Bungee Clips to clients. JP Denison's Slot Machine Bungee Clips are near replicas of the Slot Machine Card Holder design in the '531 Patent. Ex. 3, Denison Depo. at 27:1-13; ECF No. 1-3 (showing comparisons between products admittedly sold and imported by JP Denison and the patented design). JP Denison's Slot Machine Bungee Clips are near replicas of the Slot Claw Sculpture in copyright registration No. VA 1-867-812. Ex. 2; Ex. 3, Denison Depo. at 27:1-13; ECF No. 1-3.

JP Denison deliberately and willfully infringed the '531 Patent and copyright registration No. VA 1-867-812 by selling the Slot Machine Bungee Clips after being informed of the unlawful conduct. See ECF No. 8 (showing that summons was served on November 28, 2017); Ex. 5 (showing purchases totaling 102,500 clips on January 30, 2018 and January 31, 2018); Ex. 3, Denison Depo. at 80:2-13 (explaining that no bungee cord inventory remains and no inventory was destroyed).

JP Denison operates under the trade names PURE PROMOTIONS and PURE PROMOTIONS + ADVERTISING. SHC sells casino bungee clips embodying the Slot Claw Sculpture in copyright registration No. VA 1-867-812 and the patented Slot Machine Card Holder. SHC makes a per clip profit of 7.5 cents (without overhead) on its own casino bungee clips, which embody the Slot Claw Sculpture in copyright registration No. VA 1-867812 and the patented Slot Machine Card Holder. SHC has been damaged as a direct result of JP Denison's

infringement of the '531 Patent and copyright registration No. VA 1-867-812. JP Denison imported and sold the Slot Machine Bungee Clips without authorization from SHC. Because of JP Denison's unauthorized distribution and misuse of SHC's intellectual property, SHC has been damaged in the marketplace in the form of lost sales. SHC has incurred attorneys' fees and costs in connection with bringing this action.

SHC has advertised its own casino bungee clips, which embody the Slot Claw Sculpture in copyright registration No. VA 1-867-812 and the patented Slot Machine Card Holder, on its website www.shcinc.com continuously since 2013. A reasonable royalty for use of the patented Slot Machine Card Holder would be at least 25% of gross sales. SHC has sold products to at least 18 different customers, including casinos, in the Las Vegas area since 2013. SHC sold 150,000 of its own casino bungee clips, which embody the Slot Claw Sculpture in copyright registration No. VA 1-867-812 and the patented Slot Machine Card Holder, to the Stratosphere Casino and Hotel in 2014. This was at least two years prior to Defendant selling its knock-off bungee clips to the Stratosphere.

II. Standard for Summary Judgment

The purpose of summary judgment is to avoid unnecessary trials by disposing of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986); Nw. Motorcycle Ass'n v. U.S. Dept. of Agric., 18 F.3d 1468, 1471 (9th Cir. 1994). It is available only where the absence of material fact allows the Court to rule as a matter of law. Fed. R. Civ. P. 56(a); Celotex, 477 U.S. at 322. Rule 56 outlines a burden shifting approach to summary judgment. First, the moving party must demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to produce specific evidence of a genuine factual dispute for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A genuine issue of fact exists where the evidence could allow "a reasonable jury [to] return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court views the evidence and draws all available inferences in the light most favorable to the nonmoving party. Kaiser Cement Corp. v. Fischbach & Moore, Inc., 793 F.2d 1100, 1103 (9th Cir. 1986). Yet, to survive summary judgment, the nonmoving party must show

more than "some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.

III. Analysis

On October 25, 2017 Plaintiff filed the present complaint alleging (1) design patent infringement, (2) copyright infringement, (3) common law misappropriation of commercial properties; and (4) unjust enrichment. At the conclusion of discovery, Plaintiff filed the present motion for summary judgment. Defendant filed a response in opposition in which it vaguely opposed liability but mostly focused on calculation of damages.

A. Design Patent Infringement

"Design patent infringement is a question of fact, which a patentee must prove by a preponderance of the evidence.... [T]he 'ordinary observer' test should be the sole test for determining whether a design patent has been infringed. The patentee must establish that an ordinary observer, familiar with the prior art designs, would be deceived into believing that the accused product is the same as the patented design.... The ordinary observer test similarly applies in cases where the patented design incorporates numerous functional elements. In evaluating infringement, we determine whether the deception that arises is a result of the similarities in the overall design, not of similarities in ornamental features in isolation." Richardson v. Stanley Works, Inc., 597 F.3d 1288, 1295 (Fed. Cir. 2010) (internal quotation marks and citations omitted); accord Ethicon Endo-Surgery, Inc. v. Covidien, Inc., 796 F.3d 1312, 1335 (Fed. Cir. 2015) ("A design patent is infringed '[i]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other.' "). It is clear, from the undisputed photographs and diagrams attached to both the Complaint (#1) and Plaintiff's Motion for Summary Judgment as exhibits, that Defendant's Slot Machine Bungee Clips infringe the '531 Patent. At worst, they are substantially the same, at best they are identical. In fact, Defendant has done little than make vague assertions that there are questions of fact.[1] However, Defendant has identified no genuine issues of material fact that

---

[1] Defendant briefly argues that it had no knowledge of Plaintiff's patent and that its lack of knowledge is a defense to induced patent infringement citing Global-Tech Appliances, Inc.v. SEB S.A., 563 U.S. 754, 766 (2011). However, an induced infringement claim arises under 35 U.S.C. § 271(b). Plaintiff makes a direct infringement

prevent the Court from granting summary judgment on design patent infringement.

Pursuant to 35 U.S.C. § 284, Plaintiff is entitled to "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty." The phrase 'damages adequate to compensate' means "full compensation for any damages the patent owner suffered as a result of the infringement." See Grain Processing Corp. v. Am. Maize-Prods. Co., 185 F.3d 1341, 1349 (Fed. Cir. 1999) (internal quotations and citations omitted). "Full compensation includes any foreseeable lost profits the patent owner can prove." Id. It is undisputed that Plaintiff has sold its patented bungee clip to large casinos in Las Vegas since 2014 having eighteen (18) customers in and around Clark County. Two years after it sold 150,000 clips to the Stratosphere Hotel and Casino, Defendant sold its infringing clips to the Stratosphere at a discounted price. Defendant ordered 329,500 infringing clips from its manufacturer in China. They sold at a profit of approximately 7.5 cents per clip. Therefore, Plaintiff has suffered lost profit damages totaling $24,712.50.

Further § 284 allows the Court to award up to treble damages upon a finding of wilfull infringement. See Halo Electronics, Inc. v. Pulse Electronics, Inc., 136 S.Ct. 1923, 1932 (2016) (enhanced damages "are not to be meted out in a typical infringement case"). "The subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless." Id. at 1933. Further, "culpability is generally measured against the knowledge of the actor at the time of the challenged conduct." Id. citing Restatment (Second) of Torts § 8A (Am. Law Inst. 1965). Here, Plaintiff asserts that Defendant's conduct is willful because JP Denison submitted two purchase orders after it had been served with the complaint in this action. Plaintiff asserts that this is egregious evidence of willful misconduct by Defendant. Defendant asserts that these were issued for orders that had already been placed in China for which it had an obligation to pay. Deposition testimony shows that purchase orders were issued to the manufacturer who would then invoice Defendant for payment. Therefore, a preponderance of the evidence weighs in favor of finding these two instances of infringement occurred after service of the summons and complaint.

---

claim which arises under § 271(a). See Commil USA, LLC v. Cisco Sys., Inc., 135 S. Ct. 1920, 1926 (2015) (under § 271(a), "a defendant's mental state is irrelevant. Direct infringement is a strict-liability offense.").

1    Accordingly, the Court finds that Defendant willfully infringed Plaintiff's patent when it
2    invoiced the two separate orders on January 30, 2018 and January 31, 2018. Therefore, the Court
3    awards Plaintiff an additional $5,000 for each act of willful infringement. Lost profit damages
4    plus additional damages based on willful infringement total $34,712.50. Finally, the Court
5    awards Plaintiff attorney's fees for both design patent infringement and copyright infringement.
6    Plaintiff shall move for a specific amount in accordance with Local Rule 54-14.

### B. Copyright Infringement

To prove copyright infringement, a plaintiff must establish (1) "ownership of a valid copyright," and (2) "copying of constituent elements of the work that are original." Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991); Range Rd. Music, Inc. v. E. Coast Foods, Inc., 668 F.3d 1148, 1153 (9th Cir. 2012). Here it is undisputed that Plaintiff owns the Slot Claw Sculpture in copyright registration No. VA 1-867-812. "Because in most copyright cases direct evidence of copying is not available, a plaintiff may establish copying by showing that the infringer had access to the work and that the two works are substantially similar." Narell v. Freeman, 872 F.2d 907, 910 (9th Cir. 1989).

Here, Defendant had access to SHC's copyrighted design which was available on the internet beginning in 2013. "Evidence that a work has been widely disseminated to the public is sufficient to establish reasonable probability of access." See Janel Russell Designs, Inc. v. Mendelson & Assocs., Inc., 114 F. Supp. 2d 856, 864 (D. Minn. 2000). Further, Defendant submitted invoices for production of copies of the work after having been served the summons and complaint putting them on actual notice of the copyright registration. There is no argument that the works are not substantially similar. In fact, they are virtually identical with the original elements copied exactly in Defendant's Slot Machine Bungee Clips. Therefore, the Court grants Plaintiff's motion for summary judgment on its claim for copyright infringement.

Under the copyright code, a copyright owner may elect to recover an award of statutory damages not to exceed $30,000.00, or in the case of willful infringement not to exceed $150,000.00. See 17 U.S.C. §504(c)(1),(2). Here, where there is evidence of willful infringement, the Court finds that statutory damages equal to Defendant's lost profits,

1 | $24,712.50 is sufficient to protect Plaintiff's intellectual property and punish and deter
2 | Defendant from future infringing activity.

### C. Misappropriation of Commercial Properties under Nevada Common Law

Nevada has not yet recognized a claim for misappropriation of commercial properties. However, for the purpose of this motion, the Court follows other decisions of this district that have suggested that the Supreme Court of Nevada would recognize such a claim. See, *e.g.*, Las Vegas Skydiving Adventures, LLC v. Groupon, Inc., 2019 WL 5454488 *4 (D. Nev. October 23, 2019); Salestraq Am., LLC v. Zyskowski, No. 2:08-cv-01368-LRH-LRL, 2009 WL 1652170, at *3 (D. Nev. June 10, 2009), aff'd, 334 F. App'x 125 (9th Cir. 2009) (noting that Nevada recognizes claims closely related to commercial misappropriation and that California, which Nevada has followed when recognizing new commercial tort theories, recognizes a claim for misappropriation of non-trade-secret information) .

Under California law, which the Court presumes would guide the Nevada Supreme Court, a plaintiff must show that "(a) the plaintiff invested substantial time, skill or money in developing its property; (b) the defendant appropriated and used the plaintiff's property at little or no cost to the defendant; (c) the defendant's appropriation and use of the plaintiff's property was without the authorization or consent of the plaintiff; and (d) the plaintiff can establish that it has been injured by the defendant's conduct." Id. Plaintiff has met its burden in proving these elements. Further, Defendant entirely failed to oppose Plaintiff's motion for summary judgment on this claim. A non-moving party is obligated to produce specific evidence of a genuine factual dispute for trial in order to avoid summary judgment. See Matsushita, 475 U.S. at 587. The undisputed facts demonstrate that Plaintiff is entitled to judgment on its common law claim for misappropriation of commercial properties. Accordingly, Plaintiff is entitled to its lost profits of $24,712.50.

### D. Unjust Enrichment

A claim for unjust enrichment requires that Plaintiff conferred a benefit on the defendant. See Chemeon Surface Tech., LLC v. Metalast Intl., Inc., 312 F. Supp.3d 944, 956 (D. Nev. 2018). Here, Plaintiff has adduced no evidence that it conferred a benefit on Defendant. It may

be true that Defendant nefariously acquired Plaintiff's intellectual property but there is no evidence that Plaintiff conferred that property on Defendant as required by a claim for unjust enrichment. Accordingly, this claim is dismissed.

IV. Conclusion

Accordingly, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (#36) is **GRANTED**;

IT IS FURTHER ORDERED that the Clerk of the Court enter Judgment for Plaintiff and against Defendant in the following amounts: (1) Design Patent Infringement -- $34,712.50; (2) Copyright Infringement -- $24,712.50; and (3) Misappropriation of Commercial Properties -- $24,712.50;

IT IS FURTHER ORDERED that Plaintiff is awarded reasonable attorney's fees. Plaintiff must file an application for attorney's fees that complies with Local Rule 54-14.

Dated this 19th day of March, 2020.

Kent J. Dawson
United States District Judge